UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

OPAL BEHN,                          )   Case No. CV 05-5784-RC
                                    )
              Plaintiff,            )
                                    )
vs.                                 )   OPINION AND ORDER
                                    )
JO ANNE B. BARNHART,                )
Commissioner of the Social         )
Security Administration,            )
                                    )
              Defendant.            )
_____     )

     Plaintiff Opal Behn filed a complaint on August 10, 2005, seeking

review of the Commissioner's decision denying her application for

disability benefits.  The Commissioner answered the complaint on

January 3, 2006, and the parties filed a joint stipulation on May 23,

2006.


                            **BACKGROUND**

                                **I**

     On December 20, 2002, plaintiff applied for disability benefits

under the Supplemental Security Income program of Title XVI of the

Social Security Act ("the Act"), 42 U.S.C. § 1382(a), claiming an

inability to work since January 1994, due to schizophrenia, a bipolar disorder, insomnia, and back pain.  Certified Administrative Record ("A.R.") 17, 72.  The plaintiff's application was denied on April 22, 2003.  A.R. 30-34.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Cynthia A. Minter ("the ALJ") on October 5, 2004.  A.R. 35-36, 227-51.  On December 17, 2004, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 14-23.  The plaintiff appealed this decision to the Appeals Council, which denied review on April 15, 2005.  A.R. 9-13.

**II**

The plaintiff, who was born on December 7, 1953, is currently 52 years old.  A.R. 72, 229.  She has a high school education and has previously worked as an administrative secretary and a part-time baby-sitter.  A.R. 88, 93, 100, 230-31.

The plaintiff states she developed psychiatric problems after being hit in the head by a man and knocked unconscious.[1]  A.R. 201, 231-32, 237-38.  On March 27, 2002, Lynn Burroughs, a licensed clinical social worker, evaluated plaintiff at the Los Angeles County Department of Mental Health ("DMH"), diagnosed plaintiff with an unspecified depressive disorder and determined plaintiff's Global Assessment of Functioning ("GAF") to be 45.[2]  A.R. 131-35.  On

---

[1]  Although plaintiff complains of both physical and mental problems, she only challenges the ALJ's assessment of her mental complaints.

[2]  A person with a GAF of 45 exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or

April 19, 2002, a DMH psychiatrist examined plaintiff and diagnosed
her with an unspecified depressive disorder, without psychotic
features, and prescribed psychiatric medication for her.  A.R. 136-37.
Plaintiff, however, received no further treatment.  A.R. 135.

On May 14, 2004, Mark D. Pierce, Ph.D., a licensed clinical
psychologist, examined plaintiff, conducted psychological testing, and
diagnosed plaintiff with an unspecified affective disorder (depressive
and anxious symptoms with potential for psychotic regression against
suspiciously displayed symptoms seen).  A.R. 201-09.  Dr. Pierce
remarked:

> The [plaintiff's] presentation is notable for her dramatic
> and suspicious entry into this examiner's office, engaged in
> a seeming conversation with "Mr. Owl," articulating "who,
> who!" over this examiner's attempts to make introductions.
> At this point, this suspicious symptom is gently confronted
> by the examiner, re-focusing on the purpose of today's
> examination and that she must attempt to comport herself
> appropriately to the context, at which point her
> hallucinatory demonstration ceases, not to be seen again.

A.R. 201.  Dr. Pierce opined plaintiff's "presentation today does
appear to be psychiatrically depressed and withdrawn with psychotic
features possible, though this seems to be an overly dramatized

---

school functioning (e.g. no friends, unable to keep a job)."
American Psychiatric Ass'n, Diagnostic and Statistical Manual of
Mental Disorders, 34 (4th ed. (Text Revision) 2000).

psychotic presentation, thought to be given mostly for this examiner's benefit." A.R. 203-04.  Dr. Pierce further opined plaintiff "appears to put forth a challenged effort with testing, including the significant failure of the malingering memory test x 2. . . .  The [plaintiff's] general attitude was characterized by motivationally compromised effort, interest, and compliance." A.R. 203-05.  Dr. Pierce concluded:

> [Plaintiff] does not convincingly demonstrate that she would
> be disabled from completing simple and repetitive-to-medium-
> demand vocational skills and of adapting to minimal changes
> in a work environment.  Reasoning capacities are thought to
> be generally capable to this level of functioning.  [¶]  The
> [plaintiff] may show challenges working effectively with
> others by her under-motivated presentation today and an
> estimated degree of true psychiatric disorder.  She can
> remember and comply with simple one- and two-part
> instructions.  She further does not demonstrate convincingly
> that she would be disabled from concentrating adequately for
> a full workweek.

A.R. 206.  Finally, Dr. Pierce opined plaintiff has a "slight" limitation in her ability to understand, remember, and carry out detailed instructions, interact appropriately with the public, supervisors, and co-workers, and respond appropriately to changes in a routine work setting, but otherwise is not limited.  A.R. 208-09.

//

//

1    On April 16, 2003, King M. Mendelsohn, M.D., a nonexamining

2  psychiatrist, opined plaintiff has an unspecified depressive disorder,

3  which has caused "mild" restriction in plaintiff's activities of daily

4  living, "mild" difficulties in maintaining social functioning,

5  "moderate" difficulties in maintaining concentration, persistence, or

6  pace, and "one or two" episodes of decompensation.  A.R. 162-75.  Dr.

7  Mendelsohn opined plaintiff is "moderately" limited in her ability to

8  understand, remember, and carry out detailed instructions, but is

9  otherwise not significantly limited.  A.R. 157-59.  Indeed, Dr.

10 Mendelsohn opined plaintiff "retains the ability understand, remember

11 and carry out simple work-related tasks and she has no significant

12 functional limitations in her ability to sustain concentration/

13 persistence/pace, in her ability to relate to others, or in her

14 ability to adapt to the requirements of the usual workplace."  A.R.

15 159, 174.

16

17   Medical expert Stephen H. Wells, Ph.D., a licensed clinical

18 psychologist, testified at the administrative hearing that plaintiff

19 has an unspecified depressive disorder, with possible borderline

20 intellectual functioning and possible alcohol abuse, and that none of

21 these conditions meet or equal a listed impairment.  A.R. 240-45.  Dr.

22 Wells opined plaintiff should be "appropriately limited to simple

23 repetitive tasks up to medium demands with minimal changes in the work

24 environment."  A.R. 241.  Further, Dr. Wells opined:

25

26   I believe there are serious problems with credibility and

27       with the [plaintiff's] presentation.  I do not believe there

28       are true auditory hallucinations.  I believe that the

1       indications from the Ray test of malingering are important

2       with regard to the obtaining of a full scale [IQ] of 59.  I

3       would have to agree with Dr. Pierce that that is an

4       underestimation and I have to agree with his comments about

5       inconsistency but on the other hand, there does appear to be

6       a depressive disorder that is imposing limitations, and

7       . . .  I would accept those limitations indicated by Dr.

8       Mendelson including . . . a moderate impairment with regard

9       to persistence and pace.

10

11 A.R. 241-42.  Finally, Dr. Wells opined plaintiff has "mild"

12 restriction in her activities of daily living, "mild" difficulties in

13 maintaining social functioning, "moderate" difficulties in maintaining

14 concentration, persistence, or pace, and no episodes of

15 decompensation.  A.R. 210-26.

16

17                   **DISCUSSION**

18                         **III**

19       This Court, pursuant to 42 U.S.C. § 405(g), may review the

20 Commissioner's decision denying plaintiff disability benefits to

21 determine if her findings are supported by substantial evidence and

22 whether the Commissioner used the proper legal standards in reaching

23 her decision.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir.

24 2006); Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1052

25 (9th Cir. 2006).

26

27       The claimant is "disabled" for the purpose of receiving benefits

28 under the Act if she is unable to engage in any substantial gainful

activity due to an impairment which has lasted, or is expected to
last, for a continuous period of at least twelve months.  42 U.S.C. §
1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the
burden of establishing a prima facie case of disability." Roberts v.
Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
(1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).


The Commissioner has promulgated regulations establishing a five-
step sequential evaluation process for the ALJ to follow in a
disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ
must determine whether the claimant is currently engaged in
substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the
**Second Step**, the ALJ must determine whether the claimant has a severe
impairment or combination of impairments significantly limiting her
from performing basic work activities.  20 C.F.R. § 416.920(c).  If
so, in the **Third Step**, the ALJ must determine whether the claimant has
an impairment or combination of impairments that meets or equals the
requirements of the Listing of Impairments ("Listing"), 20 C.F.R. §
404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the
**Fourth Step**, the ALJ must determine whether the claimant has
sufficient residual functional capacity despite the impairment or
various limitations to perform her past work.  20 C.F.R. § 416.920(f).
If not, in **Step Five**, the burden shifts to the Commissioner to show
the claimant can perform other work that exists in significant numbers
in the national economy.  20 C.F.R. § 416.920(g).


Where there is evidence of a mental impairment that may prevent a
claimant from working, the Commissioner has supplemented the five-step

1  sequential evaluation process with additional regulations addressing

2  mental impairments.  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d

3  913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine

4  the presence or absence of certain medical findings relevant to the

5  ability to work.  20 C.F.R. § 416.920a(b)(1).  Second, when the

6  claimant establishes these medical findings, the ALJ must rate the

7  degree of functional loss resulting from the impairment by considering

8  four areas of function: (a) activities of daily living; (b) social

9  functioning; (c) concentration, persistence, or pace; and (d) episodes

10 of decompensation.  20 C.F.R. § 416.920a(c)(2-4).  Third, after rating

11 the degree of loss, the ALJ must determine whether the claimant has a

12 severe mental impairment.  20 C.F.R. § 416.920a(d).  Fourth, when a

13 mental impairment is found to be severe, the ALJ must determine if it

14 meets or equals a Listing.  20 C.F.R. § 416.920a(d)(2).  Finally, if a

15 Listing is not met, the ALJ must then perform a residual functional

16 capacity assessment, and the ALJ's decision "must incorporate the

17 pertinent findings and conclusions" regarding plaintiff's mental

18 impairment, including "a specific finding as to the degree of

19 limitation in each of the functional areas described in described in

20 [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

21

22      Applying the five-step sequential evaluation process, the ALJ

23 found plaintiff has not engaged in substantial gainful activity since

24 the alleged onset of disability.  (Step One).  The ALJ then found

25 plaintiff has "severe" impairments, including a depressive disorder

26 (Step Two); however, she does not have an impairment or combination of

27 impairments that meets or equals a Listing.  (Step Three).  The ALJ

28 next determined plaintiff is unable to perform her past relevant work

as an administrative secretary.  (Step Four).  Finally, the ALJ
determined plaintiff has the residual functional capacity to perform a
significant number of jobs in the national economy, including work as
an assembler, inspector, or packer; therefore, she is not disabled.
(Step Five).

**IV**

A claimant's residual functional capacity ("RFC") is what she can
still do despite her physical, mental, nonexertional, and other
limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);
Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,
the ALJ found plaintiff has the RFC to:

> lift 50 pounds occasionally and 25 pounds frequently; . . .
> to stand and/or walk six hours in an eight-hour workday;
> . . . to sit six hours in an eight-hour workday; limited to
> occasional climbing, balancing, stooping, kneeling,
> crouching, and crawling; unable to work in extremely cold
> environments; . . . to perform only simple, repetitive
> tasks; [is] unable to work in environments with more than
> minimal changes in the physical setting or work activities;
> and [is] unable to work in conjunction with other people in
> accomplishing work tasks but able to work in the same room
> with other people.

A.R. 22.  However, the plaintiff contends the ALJ's findings are not
supported by substantial evidence because the ALJ did not properly
assess her mental impairment.

Although Social Security regulations no longer require that the ALJ complete a Psychiatric Review Technique Form and append it to the written decision, 20 C.F.R. § 416.920a(e)(2),[3] when there is a colorable claim of a mental impairment, the ALJ must rate as being either none, mild, moderate, marked, or extreme the claimant's functional limitations in the areas of daily activities, social functioning, and concentration, persistence or pace and also rate as either none, one or two, three or four or more the claimant's episodes of decompensation, and such ratings **must** be included in the ALJ's written decision.  20 C.F.R. § 416.920a(c)(3-4), (e)(2).

Here, the ALJ found plaintiff has a severe mental impairment, a depressive disorder.  A claim is "colorable" if it is not "wholly insubstantial, immaterial, or frivolous." Rolen v. Barnhart, 273 F.3d 1189, 1191 (9th Cir. 2001) (citations omitted), cert. denied, 537 U.S. 818 (2002); Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987).  Since plaintiff's mental impairment is severe, plaintiff a fortiori raises a "colorable" claim of mental impairment. Gutierrez, 199 F.3d at 1050-51; Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005) (per curiam).  Despite this, the ALJ did not comply with the Commissioner's regulations, 20 C.F.R. § 416.920a(c)(3-4), (e)(2), and did not rate plaintiff's functional limitations in the areas of daily activities, social function, concentration, persistence or pace, and episodes of

---

[3]  Prior to September 20, 2000, "Social Security regulations require[d] an [ALJ] to fill out and attach to each decision, 'in any case where there [was] evidence which indicate[d] the existence of a mental impairment,' a psychiatric review technique form (PRTF) evaluating the severity of mental impairments." Gutierrez v. Apfel, 199 F.3d 1048, 1049 (9th Cir. 2000) (citation omitted).

1  decompensation, as she is required to do.  <u>See</u> A.R. 17-23.  Thus, the

2  ALJ failed to use the proper legal standard in making the Step Five

3  determination.

4

5      However, the Commissioner contends the ALJ's error was harmless.

6  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision

7  of the ALJ will not be reversed for errors that are harmless.").

8  First, the Commissioner argues it was harmless because the ALJ relied

9  on the opinion of Dr. Pierce, who **reviewed** Dr. Mendelsohn's ratings in

10  the four functional areas.  Jt. Stip. at 8:2-10, 9:14-25.  However,

11  the Commissioner cites no authority to support her claim that an

12  expert's reliance on a physician's ratings of the four functional

13  areas obviates the regulatory requirement that the ALJ make specific

14  ratings.

15

16      Second, the Commissioner contends the ALJ's error was harmless

17  because the ratings for the four functional areas are used only to

18  assess whether a claimant has a severe mental impairment (Step Two)

19  and, if so, whether such impairment meets or equals a listed

20  impairment (Step Three).  Jt. Stip. at 8:11-18; <u>see</u> SSR 96-8p, 1996 WL

21  374184, *4 (S.S.A.) (The four designated functional limitations areas

22  "are not an RFC assessment but are used to rate the severity of mental

23  impairment(s) at steps 2 and 3 of the sequential evaluation

24  process.").  Yet, the federal courts have consistently refused to find

25  harmless an ALJ's failure to rate the four functional areas even when

26  the ALJ has proceeded beyond Step Three in the sequential analysis.

27  <u>See</u>, e.g., <u>Gutierrez</u>, 199 F.3d at 1050-51 (rejecting argument ALJ's

28  failure to assess mental impairment was "a mere technicality, since

1  the ALJ inquired into the subjects covered by the PRTF at the hearing
2  and considered the opinions of [plaintiff's] treating physicians and
3  therapists" and concluded plaintiff could return to her past relevant
4  work); Moore, 405 F.3d at 1214 ("The ALJ failed to even analyze or
5  document [plaintiff's] condition in two of the . . . functional areas:
6  social functioning and prior episodes of decompensation.  Because the
7  ALJ's decision lacks consideration of these factors and their impact
8  on his ultimate conclusion as to [plaintiff's] RFC, we cannot even
9  evaluate the Commissioner's contention that the ALJ's error was
10 harmless.").

12     Moreover, both Drs. Mendelson and Wells opined plaintiff has a
13 "moderate" limitation in maintaining concentration, persistence, or
14 pace, A.R. 172, 220, 242, and vocational expert Susan Green testified
15 that an individual who has a "moderate" limitation in concentration,
16 persistence, or pace "probably" would not be able to perform work as
17 an assembler, inspector, or packer--the jobs the ALJ determined in
18 Step Five that plaintiff could perform in the national economy.  A.R.
19 22-23, 248.  Under these circumstances, the ALJ's failure to properly
20 rate the four functional areas cannot be considered harmless error.

22                                   V

23     When the Commissioner fails to use the proper legal standards,
24 the Court has the authority to affirm, modify, or reverse the
25 Commissioner's decision "with or without remanding the cause for a
26 rehearing."  42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072,
27 1076 (9th Cir. 2002).  Generally, "'the proper course, except in rare
28 circumstances, is to remand to the agency for additional investigation

1  or explanation.'" Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir.

2  2004) (citations omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th

3  Cir. 2004).  Here, the ALJ's legal error can be corrected with further

4  proceedings; therefore, remand is the appropriate remedy.[4]  Gutierrez,

5  199 F.3d at 1051; Moore, 405 F.3d at 1214.

6

7                                **ORDER**

8      IT IS ORDERED that: (1) plaintiff's request for relief is

9  granted; and (2) the Commissioner's decision is reversed, and the

10  action is remanded to the Social Security Administration for further

11  proceedings consistent with this Opinion and Order, pursuant to

12  sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered

13  accordingly.

14

15  DATE:  _October 18, 2006_____     _/s/ Rosalyn M. Chapman_____

16                                      ROSALYN M. CHAPMAN
                                        UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26  ─────────────────

27      [4]  Having concluded this matter must be remanded to the
    Commissioner for further proceedings, it is not necessary to

28  address the other issue raised in the joint stipulation, as it
    would not require greater relief than granted herein.

                                  13